UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>FRANCISCO ABELLAN VILLENA, et al.<br><br>Defendants. | Case No. 18-cv-4309 (RWS) |

**DECLARATION OF JENNIE B. KRASNER
IN SUPPORT OF REQUEST TO ENTER DEFAULT**

JENNIE B. KRASNER, pursuant to 28 U.S.C. § 1746, declares as follows:

1. I am over eighteen years of age, and I am employed as Senior Counsel at the Securities and Exchange Commission ("Commission"). I serve as co-counsel to the Commission in the above-captioned litigation. I am making this declaration in support of the Commission's request that the Court enter a default judgment against Defendant Francisco Abellan Villena ("Abellan") pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, Local Civil Rule 55.2(b) and the Court's Individual Rule of Practice on default judgments. I make these statements based upon my personal knowledge, information and belief.

2. The Complaint in this case was filed on May 15, 2018 (Doc. #4). The Complaint alleges that Abellan orchestrated an unregistered distribution and market manipulation scheme that took over $33 million from innocent investors. As explained further in the SEC's Memorandum in support of its Motion for Default Judgment ("Memorandum"), filed herewith, Abellan worked with his co-Defendants to prepare the fraud and then executed the manipulative trading through nominee accounts he controlled.

3.     Because Abellan's conduct violated Sections 5 and 17(a) of the Securities Act, 15 U.S.C. §§ 77e, 77q(a), and Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), the Court has subject matter jurisdiction over this action pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.     Courts may exercise personal jurisdiction "where conduct – or the effects of that conduct – take place in the forum State and are therefore subject to the State's regulation." *SEC v. PlexCorps*, No. 17-cv-7007, 2018 WL 4299983, *8 (E.D.N.Y. Aug. 9, 2018) (citation and quotation omitted). Further, "[u]nder the securities statutes at issue, the Court should consider the defendant's contacts throughout the United States and not just those contacts with New York." *Id*. (citation and quotation omitted); *see also SEC v. Straub*, No. 11-cv-9645, 2016 WL 5793398, *6 (S.D.N.Y. Sept. 30, 2016) ("Because the Exchange Act extends personal jurisdiction to the limits of the Fifth Amendment's due process clause, it is not the State of New York but the United States which would exercise its jurisdiction over Defendants here.") (citations and quotation omitted). Finally, once minimum contacts is established, "these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice." *Straub*, 2016 WL 5793398 at *8 (citations and quotation omitted). Importantly, where a defendant "purposefully has directed his activities at forum residents," jurisdiction is almost always reasonable – especially where, as here, the case is brought under federal law allowing for nationwide service of process. *Id*. at *9 (citations omitted).

5.     Here, Abellan orchestrated a fraud targeted at United States investors, using United States brokerages, and manipulating the stock of a United States issuer. *See, e.g., SEC v. Unifund SAL,* 910 F.2d 1028, 1033 (2d Cir. 1990) (affirming personal jurisdiction because conduct was "alleged to have had a rather direct and an unmistakably foreseeable effect within the United

States. . . . That activity created near certainty that United States shareholders . . . would be adversely affected."); *SEC v. Boock,* No. 09-cv-8261, 2010 WL 2398915, *2 (S.D.N.Y. June 15, 2010) (finding personal jurisdiction because "the entirety of the scheme was directed at the United States"); *PlexCorps*, 2018 WL 4299983 at *19 (finding personal jurisdiction in part because "the totality portrays a compelling picture of direct involvement with the United States, and of purposeful creation of effects in the United States"). Nor is there anything about his conduct that would make it unfair or unreasonable for the Court to exercise personal jurisdiction. Indeed, Abellan has previously been subject to the personal jurisdiction of a United States court in connection with similar misconduct. *SEC v. Abellan*, 674 F. Supp. 2d 1213 (W.D. Wash. 2009) (granting summary judgment for SEC); *see also PlexCorps*, 2018 WL 4299983 at *19-20 (citing authority for the principle that few courts "have ever declined jurisdiction, on fairness grounds, in securities cases") (citations and quotations omitted).

6. On May 16, 2018, the Clerk of Court issued a 21-Day Summons to the Defendants, including Abellan. (Doc. #7). On February 19, 2020, the SEC filed a proof of service attesting that Abellan, a Spanish citizen, was personally served with the summons and Complaint on November 27, 2019, while incarcerated at a prison in Ibiza, Spain. (Doc. # 82-2). As set forth in the proof of service, the SEC undertook substantial efforts to locate and serve Abellan, including retaining Spanish counsel. (Doc. #82). The SEC included in the certificate of service both a "Communication of Service of Process" (Doc. #82-2) and a separate statement (Doc. #82-4), both signed by the authorized court agent who initially served Abellan. In the latter, the court agent explained that his initial service, together with a subsequent personal service by the court clerk for the Central Court in Ibiza, constituted proper service under the Hague Convention and Spanish law.

7. The 90-day requirement for service of process does not apply to service in a

foreign country. *SEC v. Straub*, No. 2016 WL 5793398, *18 (S.D.N.Y. Sept. 30, 2016) (quoting Fed. R. Civ. P. 4(m)). The SEC served Abellan pursuant to Fed. R. Civ. P. 4(f)(1), which states than an individual may be served "(1) by any internationally agreed means of service . . . such as those authorized by the Hague Convention . . ." *In re Coudert Brothers LLP*, No. 16-cv-8248, 2020 WL 373838, *2 (S.D.N.Y. Jan. 23, 2020) (quoting the rule). Spain ratified the relevant Hague Convention in 1987. (Doc. #82-4); *In re Teligent, Inc.,* No. 01-br-12974, 2004 WL 724945, *3 (Bkrtcy. S.D.N.Y. March 30, 2004) ("Spain is a signatory to the Hague Convention.]").

8. The Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters of 1965 ("Hague Convention") allows for various methods of service, including "service pursuant to the internal laws of the state." *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 300 (2d Cir. 2005) (citing the relevant articles of the Hague Convention). In particular, "[p]rovided the State of destination does not object," a party may "effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination." Hague Convention, Art. 10, 20 U.S.T. 36. As set forth in the declaration of Rafael Ros Fernandez, authorized court agent for the Ibiza Courts (Doc. #82-4), the personal service on Abellan via authorized court agent was consistent with the Hague Convention and Spanish law. *See also Signify North America Corp. v. Axis Lighting Inc.,* 2019 WL 4994288, *2 (S.D.N.Y. Oct. 8, 2019) (service by bailiff in Quebec proper under Hague Convention Article 10); *Baskett v. Autonomous Research LLP*, No. 17-cv-9237, 2018 WL 4757962, *12-13 (S.D.N.Y. Sept. 28, 2018) (reviewing British law and concluding that personal service by process server was acceptable under Article 10(c)).

9. Pursuant to Fed. R. Civ. P. 12, the deadline for Abellan to plead or otherwise respond to the Complaint, based on personal service in Spain on November 27, 2019, was no later

4

than December 18, 2019.   The docket in this case reflects that Abellan did not file a responsive pleading by December 18, 2019.

11. As a result, the SEC sought a clerk's default.  (Doc. #84, 85).  The Clerk entered a default against Abellan on February 20, 2020.  (Doc. #86).  Abellan has still not filed a responsive pleading.

11. Abellan is not an infant, incompetent or in the U.S. military.

12. On July 3, 2013, the SEC sued the ostensible holders of certain brokerage accounts that sold Biozoom shares without a registration statement.  *SEC v. Tavella, et al.*, No. 13-cv-4609 (S.D.N.Y.).  The complaint is submitted as **Exhibit A** hereto.

13. In connection with its request for a temporary restraining order, the SEC submitted the Declaration of Ricky Sachar, a member at the time of the SEC Enforcement staff.  (*Tavella* Doc. #8-1).  The SEC subsequently submitted another Declaration of Ricky Sachar in connection with its motion for default judgment.  (*Tavella* Doc. #46).  In these declarations, submitted as **Exhibits B** and **C** hereto, the SEC set forth the factual basis for its calculation of the illicit proceeds for the Biozoom fraud, which totaled just under $34 million.

14. On January 9, 2015, the Court entered a default judgment against the *Tavella* defendants.  (*Tavella* Doc. #69).  That judgment is submitted as **Exhibit D** hereto.  In her memorandum setting forth the basis for the final judgment (*Tavella* Doc. #68), submitted as **Exhibit E** hereto, Judge Buchwald explained why she arrived at a slightly different amount of illicit proceeds.  (*Id*. at 13-14).  For purposes of its Memorandum in Support of the SEC's Motion for Final Judgment against Abellan, the SEC has accepted Judge Buchwald's calculations as the total illicit proceeds of Abellan's Biozoom fraud.  As a result of the *Tavella* action and judgment, the SEC froze and then obtained approximately $17 million of the illicit proceeds from this fraud before

Abellan could transfer them overseas.

15. The SEC previously obtained a judgment against Abellan for nearly identical conduct. *SEC v. Abellan*, 674 F. Supp. 2d 1213 (W.D. Wash. 2009) (granting summary judgment for SEC). The judgment in that case imposed disgorgement of over $15 million and a penalty of $480,000. *Id*. at 1221-22. Abellan did not pay any money towards those financial remedies.

16. Based on media accounts and information on a website attributed to Abellan, he sold his Barcelona mansion to the performer Shakira and the soccer star Gerard Pique for €5 million.

I declare under penalty of perjury that the foregoing is true and correct

Executed on March 25, 2020
Washington, D.C.


_____/s/_____
Jennie B. Krasner