**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>        **Plaintiff,**<br><br>    **v.**<br><br>**FRANCISCO ABELLAN VILLENA, GUILLERMO CIUPIAK, JAMES B. PANTHER, JR., and FAIYAZ DEAN**<br><br>        **Defendants.** | **Civil Action No. 18-cv-4309 (PKC)** |

## PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S OPPOSITION TO DEFENDANT JAMES B. PANTHER, JR.'S MOTION FOR RECONSIDERATION

Plaintiff Securities and Exchange Commission ("SEC") writes in opposition to Defendant James B. Panther Jr.'s ("Panther's") Motion for Reconsideration of the Court's order granting the SEC leave to file a motion for summary judgment.  ("Motion," ECF No. 122).  In the Motion, Panther appears to ask the Court to delay ruling on the SEC's Motion for Summary Judgment ("MSJ," ECF Nos. 117-119).  In effect, Panther seeks a stay of indefinite duration. (Motion at 3).  For the reasons set forth below, the Court should reject Panther's request.

Panther, now apparently representing himself *pro se*, offers five arguments to support the Motion.  He claims that: 1) he was not served properly with the MSJ; 2) he has sought but not received pro bono legal representation; 3) judicial efficiency favors a stay; 4) a stay will not prejudice the SEC; and 5) besides his participation in the fraud that is the subject of the SEC's complaint, Panther otherwise has a clean record.  (Motion at 2-3).  None of these arguments warrants delaying ruling on the MSJ.

First, as set forth in the SEC's Certificate of Service (ECF No. 120), Panther was properly served with both the request for permission to file the MSJ and the MSJ itself.  The Motion itself reinforces that service was proper.  Panther clearly is aware that: the SEC sought

permission to file the MSJ; the Court gave that permission; and the SEC subsequently filed the MSJ. Panther has apparently read the MSJ closely enough to argue that the "penalties" it seeks may be mooted by the result of the parallel criminal proceeding. (Motion at 1). He therefore had notice of the MSJ and, given that the SEC completed service in early April, sufficient time to submit a response.[1] *Reilly v. Natwest Markets Grp. Inc*., 181 F.3d 253, 270 (2d Cir. 1999) ("[D]ue process requires that courts provide notice and an opportunity to be heard before imposing any kind of sanctions.").

Second, Panther has been unrepresented in this matter since no later than July 6, 2022. (ECF No. 107). While courts should be lenient with *pro se* litigants, Panther clearly knows how to retain counsel; he has had two in this case (*Id*. and ECF No. 77) and a lawyer in the parallel criminal case, who apparently still represents him. (ECF No. 120 and *United States v. Abellan, et al*., 2:19-cr-448 (D. Ariz.), cited hereafter as "*U.S. v. Abellan*," ECF No. 159). Although Panther has not documented his supposed "limited financial resources" (ECF No. 121), he apparently communicated on April 25, 2024 with a clinic that supports *pro se* parties. (*Id*.). He claims, without details, that this support is "pending." (Motion at 3). In light of this case's long duration, these representations do not support a stay. That is especially true given the lack of specifics regarding when this support will occur, or what it will consist of, or how that support would impact a MSJ based entirely on Panther's guilty plea.

Third, judicial efficiency does not favor a stay. The SEC filed this case in 2018. In previous years, the Court has sought updates on the SEC's efforts to resolve it. (ECF Nos. 103,

---

[1] In terms of evaluating whether Panther's arguments about service are in good faith, the SEC notes that Panther's criminal counsel did not respond to SEC requests for his contact information, and that Panther has filed two recent motions but did not include contact information of any type in those pleadings. (ECF Nos. 121, 122). The means by which the SEC served the MSJ on Panther are set forth in its Certificate of Service. (ECF No. 120).

109).  As set forth in the MSJ, there is simply no dispute that the SEC is entitled to judgment

based on Panther's guilty plea in the parallel criminal matter, as well as injunctions and a penny

stock bar.  The SEC's case against Panther is ripe for resolution.  The SEC's request in the MSJ

for a $320,000 penalty is the only issue that could conceivably be impacted by the resolution of

the parallel criminal proceeding.  But the court in the parallel criminal case did not require

Panther to pay any fines or serve any prison time.  (*U.S. v. Abellan*, ECF No. 144).  Nor is the

possibility that Panther would have to pay restitution a reason not to impose a penalty in this

case.  *SEC v. Rajaratnam*, 822 F. Supp. 2d 432, 434 (S.D.N.Y. 2011) (explaining that criminal

restitution and civil penalties under the securities laws have different purposes and imposing

civil penalties on defendant who was also subject to criminal restitution and fines), *aff'd* 918

F.3d 26 (2d Cir. 2019).  And, because it is impossible to tell when the parallel criminal

proceeding will actually resolve – the case has had numerous continuances and, as Panther notes,

is currently on hold "due to ongoing efforts to repatriate funds"[2] – judicial efficiency strongly

favors denying Panther's Motion and proceeding to rule on the MSJ.

Fourth, the SEC will suffer prejudice.  It has a strong interest in the "prompt resolution"

of enforcement actions, even where parallel criminal proceedings are underway.  *SEC v. CKB168
Holdings, Ltd.*, 2016 WL 11472222, at *4 (E.D.N.Y. Jan. 6, 2016).  The SEC has repeatedly

sought to resolve this matter with Panther.  (ECF No. 106).  It should not have to wait for a

parallel criminal proceeding to conclude at some uncertain future time, or for Panther to be

provided undefined legal assistance, before the Court rules on its well-founded MSJ.

---

[2] The SEC's understanding is that the funds at issue are not Panther's and, so far as the SEC
knows, he is not assisting in their repatriation.  The apparent issue, as claimed in Panther's
Motion in *U.S. v. Abellan* (ECF No. 144), is that recovery of the assets may impact any potential
restitution Panther owes.

Fifth, and finally, Panther's claims about his criminal record and character have no bearing on whether the Court should stay this proceeding.  The undisputed fact is that he knowingly played an important role in a fraud that brought in over $33 million.  (ECF No. 118, Memo in Support of MSJ, at 16).  For the reasons set forth in the MSJ, the $320,000 penalty the SEC requests is reasonable.  (*Id*.).

In sum, none of the reasons Panther offers support the Motion or Panther's request for a stay.  The Court should proceed to rule in due course on the MSJ.

Date:   June 6, 2024

           ___/s/ Daniel Maher
           Daniel Maher (*admitted pro hac vice*)
           Duane Thompson (*admitted pro hac vice*)
           Jennie B. Krasner
           Securities and Exchange Commission
           100 F Street, NE
           Washington, D.C. 20549
           Tel: (202) 551-4737 (Maher)
           Email: maherd@sec.gov

## **CERTIFICATE OF SERVICE**

I certify that on June 6, 2024, I caused the foregoing to be filed on ECF and to be sent by email to the following.

*Counsel for Defendant James Panther in his Criminal Case*

Andrea Tazioli
NCP Lawyers
3200 North Central Avenue
Suite 2550
Phoenix, AZ 85012
Andrea@ncplawyers.com

Guillermo Ciupiak
At his personal email address

4

<u>/s/ Daniel J. Maher</u>
Co-Counsel for the SEC